Christian S. Molnar, Esq. (SBN 177665)
**ARENDSEN CANE MOLNAR, LLP**
315 S. Beverly Drive, Suite 320
Beverly Hills, California 90212
Telephone: (310) 299-8630
Facsimile: (310) 820-9926
Email: cmolnar@arendsenlaw.com

Attorneys for Highlander Holdings, Inc., a California corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Highlander Holdings, Inc., a California Corporation;<br><br>   Plaintiff,<br><br>  vs.<br><br>Andrew Fellner, an individual; Strategic Global Investments, Inc., a Delaware Corporation; and Does 1 through 20, inclusive,<br><br>   Defendants. | Case No.:  **'18 CV 1506 DMS WVG**<br><br>**COMPLAINT FOR:**<br><br>(1) **Material Misrepresentation in the Sale of Securities Pursuant to Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934;**<br>(2) **Material Misrepresentation in the Sale of Securities Under Section 12(2) of the Securities Act of 1933;**<br>(3) **Material Misrepresentation in the Sale of Securities Under California Corporations Code § 25401 and § 25501;**<br>(4) **Negligent Misrepresentation;**<br>(5) **Fraud in the Inducement;**<br>(6) **Breach of Fiduciary Duty, and**<br>(7) **Constructive Trust** |

Highlander Holdings, Inc., a California Corporation ("Plaintiff") brings this action for rescission and damages against Defendants Andrew Fellner, an individual ("Defendant Fellner" or "Fellner"); and Strategic Global Investments, Inc., a Delaware Corporation ("Defendant Strategic" or "Strategic"); and Does 1 though 20, inclusive (collectively, the "Doe Defendants"). Defendant Fellner, Defendant Strategic and the

Doe Defendants are sometimes collectively referred to herein as "Defendants."

## PARTIES

1.      Plaintiff is now, and at all times mentioned herein was, a California corporation.[1] Plaintiff maintains its headquarters in the County of San Diego, State of California, and, in exchange for a Five Hundred Thousand Dollar ($500,000.00) investment, holds 3,005,000,000 shares of common shares in Strategic.

2.      Defendant Strategic, formed in 2008, is a publicly traded Delaware corporation and, at all times relevant to this action, was headquartered in San Diego, California.[2] Strategic's common stock is classified as a "penny stock" (as such term is defined by the Securities and Exchange Act of 1934 [the "Exchange Act"]) and traded on the OTC Pink Marketplace (symbol: STBV).

3.      Defendant Fellner is a resident of Carlsbad, California and at all material times was the CEO, secretary, treasurer, and sole director of Strategic.  Fellner acquired a controlling interest in Strategic in 2010.[3]  In July 1982, Fellner pleaded guilty to conspiracy and federal mail fraud for his role in a multimillion-dollar real estate and forgery fraud scheme and served approximately three (3) years in prison.

4.      Plaintiff does not know the true names of the Doe Defendants and therefore sues them by those fictitious names.  Plaintiff is informed and believes, and on the basis thereof herein alleges, that each of the Doe Defendants was in some manner legally responsible for the events and happenings alleged herein and for Plaintiff's damages therefrom.  The names, capacities, and relationships of the Doe Defendants will be alleged by amendment to this complaint when they are known.

///

///

---

[1] Highlander Holdings, Inc. was formerly known as McGregor and Associates Insurance Administration, Inc. d/b/a McGregor & Associates, Inc., but in May of 2018 the company changed its name to Highlander Holdings, Inc.
[2] Strategic moved its executive offices to West Palm Beach, Florida on or around May 2017.
[3] Feller sold all of his stock in Strategic and stepped down from all board, executive and management positions therein in May 2017.

5.      Plaintiff is informed and believes, and based thereon herein alleges, that at all times mentioned herein, Defendants, and each of them, were the agents and/or employees of the other, and each of them, in doing the acts alleged herein, were acting within the purpose and scope of said agency and employment.

6.      Each Defendant is sued individually and as an agent, conspirator, aider and abettor, investor, manager, unit-holder, employee and/or control-person for each of the other Defendants, and the liability of each Defendant arises from the fact that it engaged in all or part of the unlawful acts, plans, schemes, or wrongs complained of herein and was acting within the course and scope of said agency, partnership, conspiracy, and employment.

## JURISDICTION AND VENUE

7.      The Court has personal jurisdiction over Defendants because they resided in California at all material times, conducted business in the State of California, and contracted with Plaintiff and others in the State of California, and, as such, voluntarily subjected themselves to the laws of this state.

8.      This Court has subject matter jurisdiction and supplemental jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1391 and § 1367 because the claims arise under the Federal Securities and Exchange Act of 1934.

9.      Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b)(1) because Defendant Fellner resides in the County of San Diego, California and because Defendant Strategic conducted business in and, at all material times, maintained its principal place of business in the State of California and the County of San Diego. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because certain of Defendants' transactions, acts, practices and courses of conduct constitute violations of the federal securities laws and occurred within this district.

///

///

///

# **FACTUAL ALLEGATIONS**

10.     In or around 2010, Defendant Fellner purchased a majority of shares in Strategic, and thereafter became its chief executive officer, secretary, treasurer, and sole director.

11.     In or around late 2012, Defendant Feller approached George McGregor, Plaintiff's president and owner ("Mr. McGregor"), seeking Plaintiff's investment in Defendant Strategic, pitching it as a company engaged in a number of promising business opportunities.

12.     The initial opportunity Defendant Fellner pitched to Mr. McGregor for Plaintiff was Strategic's transforming of a previously-acquired piece of real estate located in Baja, Mexico, dubbed *Puna Perfecta*, into a vacation resort property.  Another opportunity was Strategic's importing of high-end wine and cigars from China to the United States.   And, yet another opportunity, was Strategic's utilization of the production studio facility it acquired in its purchase of Wazzuu, Inc., to produce informational content videos starring known television personalities (or, in the alternative, loan out the facility to clients wanting to produce their own content), and subsequently stream those videos on a Strategic-hosted website or other similar platform.

13.     Based on the foregoing business opportunities, and Defendant Fellner's representations that such opportunities were both "underway" and "promising," Mr. McGregor agreed, on behalf of Plaintiff, to invest Two Hundred Thousand Dollars ($200,000.00) in Strategic (the "Initial Investment"), which Plaintiff paid in sixteen (16) equal payments of Twelve Thousand Five Hundred Dollars ($12,500.00) each, between approximately October 1, 2012 and January 2, 2014.   In exchange for the Initial Investment, Plaintiff received two million (2,000,000) shares of common stock in Strategic that were issued on stock certificates as follows: (i) one million (1,000,000) shares dated December 27, 2012; (ii) five hundred thousand (500,000) shares dated March 6, 2013; and (iii) five hundred thousand (500,000) shares dated June 28, 2013. ///

14.     Pursuant to Defendant Strategic's offering documents dated March 15, 2013 (the "Offering Circular"), Defendant Strategic described itself (and held itself out) as a "development stage company," offering video production and social media information services, "providing our customers with various opportunities to use the internet to provide on demand information or advertising to targeted audiences."

15.     In or around early spring of 2013, Defendant Fellner notified Strategic investors that the company developed a well-crafted strategy and business plan for entry into Colorado's medical marijuana business.

16.     On April 4, 2013, Defendant Strategic, issued a press release (the "April 4, 2013 Press Release"). The April 4, 2014 Press Release (the first of many) announced Defendant Strategic's foray into the marijuana business,[4] stating, among other things, that, "GrowLife, Inc., a provider of highly effective indoor growing technologies and unique lifestyle brands ... has signed a Letter of Intent with [Strategic] to build a comprehensive, multichannel media network for the marijuana industry" (the "April 2013 Press Release").

17.     On February 10, 2014, Defendant Strategic issued a press release (the "February 2014 Press Release"), announcing that the Company "entered into meaningful negotiations for the purchase of a marijuana growing facility located in Teller County, Colorado." The February 2014 Press Release further stated that it expected "to yield a harvest and generate revenue from the sale of [marijuana] plants by the 3rd Quarter of [2014][,]" and that it planned to have "the first new crop started in the first week of March [2014]." Defendant Fellner is quoted in the February 2014 Press Release, stating "the demand in this newly legalized industry is sure to bring in significant revenue going into the third and fourth quarter of 2014."

///

---

[4] On November 6, 2012, Colorado voters approved Amendment 64, which legalized recreational marijuana in Colorado as a matter of state law.  On December 10, 2012, the State of Colorado amended its constitution to provide that the use of marijuana should be legal in the state and regulated in a manner similarly to alcohol.  Colo. Const. Art. 10 Section 16(10)(a).

18.     On February 20, 2014, Defendant Strategic issued a press release (the "February 20 Press Release"), announcing that it "signed an agreement for the purchase of Bearpot, Inc. (hereinafter, "Bearpot").  Allegedly, Bearpot was the controlling entity in a twenty-eight (28) member marijuana growing facility located in Teller County, Colorado." In the February 20, 2014 Press Release, Defendant Strategic also claimed that it "evaluated the industry and [expected] to be able to yield a harvest and generate revenues from the sale of plants by the 4th Quarter of this year."

19.     Defendant Fellner reiterated this projection in a February 24, 2014 letter to shareholders, which Defendant Strategic included in a press release of even date therewith (the "February 24, 2014 Press Release"). The February 24, 2014 Press Release quoted Defendant Fellner and stated that Strategic now *owned* a "marijuana cultivation facility[,]" and included Defendant's Fellner's acknowledgement that a recent increase in trading activity of STBV was attributable to the marijuana cultivation facility.

20.     Four (4) days later, Defendant Strategic published an "executive interview" in its February 28, 2014 press release (the "February 28, 2014 Press Release") wherein Defendant Fellner explained that "the largest amount of growth that we will see in the next 3-6 months for [Strategic] surely will be in the growing and distributing of medical and recreational marijuana."

21.     On March 27, 2014, Defendant Strategic issued a press release (the "March 27, 2014 Press Release") identifying the company's accomplishments relating to the purported marijuana cultivation facility.  It further stated that Strategic experienced "a very busy quarter," and included a list detailing completion of all electrical and structural upgrades to the Bearpot cultivation facility.

22.     On July 9, 2014, the Securities Exchange Commission ("SEC") issued and served Strategic with an investigatory subpoena seeking documents to establish and support claims Defendant Strategic made in the April 4, 2013 Press Release, the February 10, 2014 Press Release, the February 20, 2014 Press Release, the February 24, 2014 Press Release, the February 28 Press Release, and the March 27, 2014 Press Release

(collectively, the "Press Releases").  Although Defendants twice responded to the SEC subpoena, on August 18, 2014 and August 28, 2014, respectively, Defendants failed to disclose the SEC investigation to Strategic investors, including Plaintiff.

23.     In or around 2014, Defendant Fellner continued soliciting additional investment funding from investors, including Plaintiff, and in his solicitation he represented that Defendant Strategic would have all of the necessary funding, legal permits, legal requirements, as well as the facilities to be successful in the medical marijuana business.

24.     In or around January 2015, based on Defendant's' representations regarding Strategic's market positioning and its anticipated success in the marijuana business, Plaintiff invested additional funds in Defendant Strategic. Pursuant to a Stock Purchase Agreement and Promissory Note dated January 15, 2015 (the "SPA" and the "Note," respectively), Plaintiff invested an additional Three Hundred Thousand Dollars ($300,000.00) in exchange for three billion (3,000,000,000) shares of common stock in Strategic.[5]   A copy of the SPA and the Note are hereto as **Exhibit "A,"** and incorporated herein by this reference as if fully set forth.

25.     McGregor made timely payments pursuant to the Note commencing in January 2015.  The last payment of which was due December of 2016.

26.     On February 29, 2016, the Securities Exchange Commission ("SEC") filed a complaint against Defendants Fellner and Strategic (the "SEC Action"), alleging the following[6]:

a) In February 2014, Defendants made material false and misleading statements in various press releases, which they disseminated publicly on www.otcmarkets.com.  These press releases falsely portrayed Strategic as owning

---

[5] For clarity, the operative SPA and Note are dated May 15, 2015, which replaced the January 15, 2015 SPA and Note. McGregor began making further investment payments, however, to Defendant Strategic pursuant to the January 15, 2015 SPA and Note.
[6] *Securities and Exchange Commission vs. Strategic Global Investments, Inc. and Andrew T. Fellner.* Case No. 16-cv-00514-JLB

a revenue-generating marijuana cultivation facility in Teller County, Colorado. At that time, however, Defendant Strategic was involved in industries wholly *un*related to marijuana.

b) At no time did Defendant Strategic have the ability to operate in the marijuana business space or legally generate revenue from the sale of marijuana generated from its purported cultivation facility in Teller County, Colorado because Defendant Strategic lacked the requisite licensure, funding, and other corporate infrastructure necessary for operating a successful marijuana-related business.

c) Defendants made material misrepresentations and omissions in connection with a January 2014 securities offering in failing to disclose in Defendant Strategic's Form 1-A offering documents filed with the SEC that Defendant Strategic: (a) used investor proceeds to enter the marijuana business; and (b) later exited that business.

d) Defendants knew, or were reckless in not knowing, that the information in the disseminated press releases and offering documents contained false and misleading statements relating to Defendant Strategic's purported marijuana business and use of investor proceeds.

e) By knowingly or recklessly engaging in the conduct described in the complaint in the SEC Action, Defendants violated, and, unless enjoined will continue to violate, Section 10(b) and Rule 10b-5(b) of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.l0b-5, and Section 17(a)(2) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 20 77q(a)(2).

27.     The SEC uncovered that the following specific facts from Defendant Strategic's statements regarding its purported foray into the marijuana business were false and misleading:

a) Defendants falsely mischaracterized to investors its purchase of Bearpot's assets as the acquisition of "an existing" marijuana cultivation facility in Teller County,

Colorado when, in fact, no such facility existed.  The purported cultivation facility was, in fact, a rented two-story house located in a residential area of Teller County.

b) Defendants failed to disclose that Bearpot was not permitted have such a facility or operation in that location because: 1) Teller County Ordinance #18, effective as of March 2013, prohibited the licensing and operation of, among other things, marijuana cultivation facilities, 2) under various Colorado state laws, commercial medical marijuana cultivation requires a license, which neither Bearpot nor Defendants, or their respective officers, ever acquired or possessed, and 3) Teller County zoning regulations did not permit commercial marijuana grow houses in the residential area where the purported Bearpot facility was located.

c) Neither Bearpot nor Strategic had, or legally could have had, a functioning marijuana cultivation facility, rendering baseless Defendant Strategic's revenue and growth projections. At the time of the Press Releases, Defendant Fellner was the CEO, secretary, treasurer, and sole director of Strategic, therefore having ultimate authority over the issuance, content and formulation thereof.

d) In his position as CEO, secretary, treasurer, and sole director of Strategic, Defendant Fellner knew or should have known the legal and licensing requirements of and for the marijuana business in Colorado. Further, Defendant Fellner knew or should have known that the Bearpot facility was not properly located, licensed, or equipped to legally cultivate marijuana.

e) Misleading information in Defendant Strategic's Form 1-A filing revealed that Strategic raised operating capital via offerings pursuant to Regulation A of the Securities Act. Between March 2013 and September 2015, the SEC qualified five (5) of Strategic's Regulation A offerings.

f) Rule 253(e) of Regulation A, 17 C.F.R. § 230.2S3(e), required Defendant Strategic to revise its January 2014 Regulation A offering documents during the twelve (12) months succeeding the date of qualification whenever the information in the corresponding Forms 1-A became false or misleading, material developments

occurred, or there was a fundamental change to the information initially presented. A Form 1-A essentially acts as a registration statement used during an offering under Regulation A of the Securities Act. The Form 1-A informs investors about the offering company, including, without limitation, the type of business it conducts and transacts.

g) Beginning in January 2014, Defendant Strategic offered its securities to investors and prospective investors via an offering under Regulation A, which ultimately raised $3.4 million, and concurrently disseminated false and misleading information about its business venture and the use of investor proceeds in its corresponding Form 1-A during the offering.

h) The SEC qualified Strategic's Regulation A offering on January 17, 2014. The corresponding Form 1-A, which Defendant Fellner signed in his capacity as CEO, described Defendant Strategic as being in the video production business and contained no reference to the marijuana business.

i) The Form 1-A further stated that the proceeds from the offering would be used "primarily to increase the marketing efforts of the company and to install more equipment for its live [streaming] based business and for other general corporate purposes."

j) Defendant Strategic sold approximately $2.1 million worth of stock pursuant to the exemption set forth in Regulation A in the first three (3) months of 2014.

k) In February 2014, Defendant Strategic did not file an amendment to its Form 1-A.

l) Such an amendment was required by Rule 253(e) because, while the offering was ongoing, the company used Fifty Thousand Dollars ($50,000) of investor proceeds to acquire Bearpot. While Bearpot did not have the revenue, licensure, or other necessary requirements to actually or legally grow commercial marijuana, the purchase of Bearpot indicated a switch in Defendant Strategic's business plan. Thus, Defendants' failure to file an amendment to the Form 1-A rendered statements about Strategic's business and its use of proceeds false and misleading.

m) In April 2014, Defendant Strategic planned to exit the marijuana business.

n) Defendant Strategic never updated its Form 1-A to reflect its plan to exit the marijuana business.

o) Strategic subsequently filed a Form 1-A and amendments for a new Regulation A offering in April 2014, in which it disclosed its entrance into and plan to exit the marijuana business, into which it had already placed investor proceeds. However, this belated amendment did not relieve Defendant Strategic of its obligation under Rule 2-253(e) to update the earlier Form 1-A for a different offering. In short, the filing of a *new* Regulation A offering form did not correct the previously filed, false and misleading Form 1-A.

p) Investors depend on true, correct, and complete Form 1-A disclosures to understand how companies use their funds. Reasonable investors are entitled to timely know, and would have timely wanted to know, that: (1) funds they thought were being used for video production were instead being used in a marijuana business, and (2) Defendant Strategic planned to exit the marijuana business shortly after entering into it.

28.    The SEC complaint further alleged that Defendants' misrepresentations significantly impacted the value of Defendant Strategic.

a) The SEC alleged that, concurrent with its issuance of the Press Releases and its failure to amend the original Form 1-A, the average daily trading volume in Strategic stock increased significantly, from approximately 5.13 million shares between April 1, 2013 and February 7, 2014 to 849 million shares between February 10, 2014 and March 27, 2014.

b) It also alleged that Strategic's closing share prices increased from $0.0032 on February 7, 2014 to $0.055 on February 10, 2014 (an increase of over 1600%), when Defendant Strategic announced its entry into the marijuana industry, with a trading volume that day of 470 million shares. Trading reached a peak volume of

approximately 2.13 billion shares on March 24, 2014 before the price dropped to $0.0001 on April 16, 2014.

29.   Defendant Fellner concealed the SEC Action and all of the allegations raised therein from investors, including Mr. McGregor and Plaintiff.  Instead, Defendants continued taking payments from Plaintiff and misrepresented the status of its investments.

30.   Unaware of the SEC Action, on April 12, 2016, Mr. McGregor emailed Defendant Fellner asking for a status on his investment.  Without mentioning the pending SEC Action against him, Defendant Fellner responded:

> While it has taken a little longer than we had anticipated, **things are progressing well** with the project and **we are optimistic about growth and sales**. There are of course some issues with various governmental agencies as they do not like small companies being involved in the public sector but we are working through those as well.
> On another note, since it has taken longer than we anticipated to get to full speed, the stock price has dropped and I would like to make that up to you by issuing an additional 3,000,000 shares at no cost to you.  If this is agreeable to you, please let me know and I will send you a Subscription Agreement to sign and then once I receive it back, will issue you or who you designate the additional shares.

31.   On April 24, 2016, twelve (12) days later, unbeknownst to Plaintiff McGregor, Defendants filed an answer in the SEC Action.

32.   On May 23, 2016, Defendant Strategic issued a stock certificate for an additional three million (3,000,000) shares of common stock to Plaintiff.

33.   Plaintiff continued making payments to Defendant Strategic pursuant to the Note, and completed its final payment thereunder on December 1, 2016.

34.   As of December 1, 2016, Plaintiff invested a total of Five Hundred Thousand Dollars ($500,000.00) in Defendant Strategic, and owned a total of three billion five hundred million (3,005,000,000) shares of common stock in Defendant Strategic.

35.   Defendant Fellner waited until February 2, 2017 to disclose the SEC Action to Mr. McGregor, almost a year after the SEC Action was filed and two (2) months *after* Plaintiff made its final payment under the Note to Defendant Strategic.

36.     On April 17, 2017, the SEC was awarded a summary judgment in the SEC Action, finding liability against the Defendants.  Specifically, the Court found that Defendants made several fraudulent misrepresentations and omissions to its investors in connection with (and to induce) the purchase or sale of securities, which were made by use of an instrumentality of interstate commerce, and that those statements and omissions were made with scienter (i.e. knowledge of wrongness).

37.     Based on a plea agreement, the Court issued four (4) judgments: (i) permanently restraining and enjoining Defendants from violating the federal securities laws; (ii) directing Defendants to pay civil money penalties; (iii) imposing a penny stock bar against Defendant Fellner; and (iv) imposing an officer and director bar against Defendant Fellner.

38.     The SEC Action also exposed Defendant Fellner's earlier conviction of fraud, a felony, for which he served three (3) years in prison.  At no time referenced herein did Defendant Fellner disclose his felony conviction to Strategic investors in violation of SEC's Rule 506 of Regulation D (17 U.S.C. §230.506(e)).

39.     In accordance with the judgment against him, on May 15, 2017, Defendant Fellner executed a stock purchase agreement with third-party Garland Harris ("Harris"), selling all of his shares in Defendant Strategic, including twenty million seven hundred forty five thousand (20,745,000) shares of common stock and two million one hundred forty five thousand (2,145,000) shared of Class A preferred stock in exchange for One Dollar ($1.00).

40.     Also in accordance with the judgment against him in the SEC Action, on May 31, 2017, Defendant Fellner resigned from Strategic's Board of Directors and from all executive and management positions at the company.

41.     On or about May 31, 2017, Harris was appointed sole director of Strategic's board of directors and also appointed president, secretary and treasurer; and, on even date therewith, Harris instituted a move of Defendant Strategic's principal executive offices to West Palm Beach, Florida.

42.     On information and belief, on or about August 17, 2017, Defendant Strategic began using the public trading status of the company to enter the cryptocurrency market, intending to track or trade its shares on the Decentralized Exchange Market ("DEX"), which is on the Bitcoin blockchain.

43.     On August 30, 2017, Plaintiff contacted Harris noting his ownership of three billion, five million (3,005,000,000) shares of Defendant Strategic, and inquiring about the status of the company.  In response to this inquiry, Harris left a message for Plaintiff requesting copies of his stock certificates.

44.     On August 31, 2017, Plaintiff received an email from an executive at Defendant Strategic offering to exchange his brokerage shares in Strategic for tokenized shares for placement and trading on the DEX and, whereby, Defendant Strategic would act as both issuer and transfer agent thereof.  Also included in this email communication was a second request for Plaintiff to provide copies of his stock certificates.  This communication was the first time Plaintiff learned of Strategic's intent to trade its shares on the DEX.

45.     Plaintiff sent Harris copies of his Strategic stock certificates, but took no action with respect to Defendant Strategic's August 31, 2017 offer to tokenize his shares in the company for DEX trading. Instead, Plaintiff continued seeking updates about the status and future of Strategic, so that he could make an informed decision about his holdings and investment therein. To date, Plaintiff has received no response from Defendant Strategic or Harris in response to his many inquiries.

46.     On information and belief, in March 2018, Defendant Strategic relocated its principal place of business to Branson, Missouri.

47.     On information and belief, Strategic has never held an annual meeting, nor has Plaintiff received notice of any such meeting(s) or votes, nor has Plaintiff received any annual report(s) for Strategic, in violation of state law in both Delaware (where Strategic is incorporated) and California.

///

48.     On information and belief, Defendants knowingly withheld information about Strategic, its businesses and its management that they knew or should have known was, or would be, necessary for Plaintiff to make informed decisions about his holdings and investment in the company.  Such withholding of information prevented and/or materially impaired Plaintiff's ability to make informed and reasonable decisions about his investment in the company.

49.     Plaintiff would not have invested in Defendant Strategic had it known of Defendant Fellner's previous fraud conviction and criminal record.

50.     Plaintiff would not have invested, nor would it have continued investing, in Strategic had it known that Defendant Fellner did not have the requisite knowledge or know-how to operate and manage a publicly traded company.

51.     Plaintiff would not have invested in Defendant Strategic had it been disclosed that Defendants did not have the infrastructure, capital, know-how, licensing, and requirements necessary to successfully operate a medical marijuana business.

52.     Plaintiff would not have continued investing in Strategic had Defendants disclosed that they were under investigation by the SEC.

53.     Plaintiff would not have continued investing in Strategic had Defendants disclosed that they were being prosecuted for fraud by the SEC.

54.     On information and belief, Defendants did not use Plaintiff's financial investment for the purposes, or in the manner, for which Defendants proposed the investment funds would be used.

## FIRST CAUSE OF ACTION

### (Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act Against Defendants)

55.     Plaintiff repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 54, inclusive, above, and incorporates the same herein in full.

56.     Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. Section 78j(b)) states,

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange…[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

57.    SEC Rule 10b-5 (17 C.F.R. 240.10b-5), makes it unlawful for any person,

…directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

58.    A private party plaintiff seeking money damages for a violation of Section 10(b) and Rule 10b-5 must demonstrate a: (1) material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance and (5) damages.

59.    Between March 2013 and December 2016, Defendants, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of any means or instrumentalities of interstate commerce, or the mails, made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, misleading.

60.    These misrepresentations and omissions that Defendants made to Plaintiff include the following:

///

///

a) Omitting the disclosure of Fellner's felony convictions of conspiracy and federal mail fraud to investors of Strategic, in violation of the mandatory disclosure requirements of SEC's Rule 506 of Regulation D;

b) Misrepresenting or falsely portraying Strategic's ownership of a revenue-generating marijuana cultivation facility in Teller County, Colorado, in January 2014, when in fact, it did not have, nor did it ever have, the ability to operate in the marijuana business space or legally generate revenue from the sale of marijuana generated from its purported cultivation facility in Teller County, Colorado;

c) Mischaracterizing to Strategic's investors its purchase of Bearpot's assets as the acquisition of "an existing" marijuana cultivation facility in Teller County, Colorado, when in fact, Bearpot had no such facility – the purported cultivation facility was instead a rented two-story house in a residential area of Teller County;

d) Failing to disclose the fact that applicable laws prohibited Bearpot from having a facility in Teller County, Colorado because: (i) Teller County Ordinance #18, effective as of March 2013, prohibited the licensing and operation of, among other things, marijuana cultivation facilities, (ii) under various Colorado state laws, commercial medical marijuana cultivation required a license, which neither Bearpot, nor Defendants, or their officers, ever had, and (iii) Teller County zoning regulations did not permit commercial marijuana grow houses in the residential area where Bearpot's purported facility was located;

e) Falsely portraying Bearpot and Strategic as having both the legal and financial potential to have a functioning marijuana cultivation facility using false revenue and growth projections;

f) Falsely portraying Strategic as having the requisite licensure, funding, and other corporate infrastructure needed to run a successful marijuana-related business in January 2014;

g) Failing to disclose in or on Strategic's Form 1-A offering documents filed with the SEC that Strategic used investor proceeds to enter the marijuana business,

when it had actually—at that point—procured funds for the purpose of investing in video production/social media ventures;

h) Failing to file accurate 1-A forms with the SEC;

i) Failing to disclose to investors of Strategic, including Plaintiff (who continued making investment payments under the Note into December 2016) that Strategic decided to exit the marijuana business in April 2014;

j) Failing to disclose to investors of Defendant Strategic that, in August 2014, the company was being investigated by the SEC;

k) Failing to inform Strategic's investors that, in February 2016, the SEC initiated a lawsuit against Fellner and Strategic (but continued accepting investment payments as if the SEC Action did not exist); and,

l) Falsely representing to Plaintiff, in April 12, 2016, that "things are progressing well" and that Defendants were "optimistic about growth and sales," when in fact Strategic was not positioned for growth.

61.    The foregoing omissions and representations induced Plaintiff, to invest a total of Five Hundred Thousand Dollars ($500,000.00) in Defendant Strategic from 2012-2016.

62.    As a result of Defendants' violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b), Plaintiff has been damaged in an amount to be established at trial.

63.    As a result of these material misrepresentations, Plaintiff is entitled to rescind the above-described purchases, and have the consideration given therefor repaid with interest thereon.

64.    Plaintiff, before entry of judgment, will tender to Defendants and each of them, the units which they respectively hold and which were purchased from Defendants, and each of them, and on which, to date, Plaintiff has received Zero Dollars ($0.00) as total income.

///

## SECOND CAUSE OF ACTION

### (For Material Misrepresentation in the Sale of Securities Under Section 12(2) of the Securities Act of 1933 Against Defendants)

65.     Plaintiff repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 64, inclusive, above and incorporates the same herein in full.

66.     Between 2012-2016, Defendants, and each of them, individually and collectively, offered and sold to Plaintiff an aggregate of three billion five million (3,005,000,000) shares of common stock in Strategic in consideration for Plaintiff's investment of Five Hundred Thousand Dollars ($500,000.00).

67.     These transactions were made, using instrumentalities of interstate commerce, including, but not limited to, telephones and the mail (and e-mail), by means of prospectus and oral communications, which included the above-mentioned untrue statements of material fact and which omitted material facts that were necessary in order to make the statements made in those communications, in light of the circumstances under which they were made, not misleading.  The communications were false in the manner set forth herein, including:

a) Omitting the disclosure of Fellner's felony convictions of conspiracy and federal mail fraud to investors of Strategic, in violation of the mandatory disclosure requirements of SEC's Rule 506 of Regulation D;

b) Misrepresenting or falsely portraying Strategic's ownership of a revenue-generating marijuana cultivation facility in Teller County, Colorado, in January 2014, when in fact, it did not have, nor did it ever have, the ability to operate in the marijuana business space or legally generate revenue from the sale of marijuana generated from its purported cultivation facility in Teller County, Colorado;

c) Mischaracterizing to Strategic's investors its purchase of Bearpot's assets as the acquisition of "an existing" marijuana cultivation facility in Teller County, Colorado, when in fact, Bearpot had no such facility – the purported cultivation facility was instead a rented two-story house in a residential area of Teller County;

d) Failing to disclose the fact that applicable laws prohibited Bearpot from having a facility in Teller County, Colorado because: (i) Teller County Ordinance #18, effective as of March 2013, prohibited the licensing and operation of, among other things, marijuana cultivation facilities, (ii) under various Colorado state laws, commercial medical marijuana cultivation required a license, which neither Bearpot, nor Defendants, or their officers, ever had, and (iii) Teller County zoning regulations did not permit commercial marijuana grow houses in the residential area where Bearpot's purported facility was located;

e) Falsely portraying Bearpot and Strategic as having both the legal and financial potential to have a functioning marijuana cultivation facility using false revenue and growth projections;

f) Falsely portraying Strategic as having the requisite licensure, funding, and other corporate infrastructure needed to run a successful marijuana-related business in January 2014;

g) Failing to disclose in or on Strategic's Form 1-A offering documents filed with the SEC that Strategic used investor proceeds to enter the marijuana business, when it had actually—at that point—procured funds for the purpose of investing in video production/social media ventures;

h) Failing to file accurate 1-A forms with the SEC;

i) Failing to disclose to investors of Strategic, including Plaintiff (who continued making investment payments under the Note into December 2016) that Strategic decided to exit the marijuana business in April 2014;

j) Failing to disclose to investors of Defendant Strategic that, in August 2014, the company was being investigated by the SEC;

k) Failing to inform Strategic's investors that, in February 2016, the SEC initiated a lawsuit against Fellner and Strategic (but continued accepting investment payments as if the SEC Action did not exist); and,

l) Falsely representing to Plaintiff, in April 12, 2016, that "things are progressing well" and that Defendants were "optimistic about growth and sales," when in fact Strategic was not positioned for growth.

68.    Plaintiff has suffered damages as a result of Defendants and each of their actions, in an amount to be established at trial.

69.    As a result of the material misrepresentations, Plaintiff is entitled to rescind the above-described purchases and have the consideration given repaid with interest thereon.

70.    Plaintiff, before entry of judgment, will tender to Defendants and each of them, the units which they respectively hold and which were purchased from Defendants, and each of them, and on which, to date, Plaintiff has received Zero Dollars ($0.00) as total income.

## THIRD CAUSE OF ACTION

### (For Material Misrepresentation in the Sale of Securities Under California Corporations Code § 25401 and § 25501 Against Defendants)

71.    Plaintiff repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 70, inclusive, above and incorporate the same herein in full.

72.    In or about 2012-2016, Defendants and each of them, individually and collectively, offered and sold to Plaintiff an aggregate of three billion five million (3,005,000,000) shares of common stock in Defendant Strategic in consideration for Plaintiff's investment of Five Hundred Thousand Dollars ($500,000.00).

73.    These transactions were made, by means of written and oral communications, which included specified untrue statements of material fact and which omitted to state material facts that were necessary in order to make the statements made in those communications, in light of the circumstances under which they were made, not misleading.  The communications were false in the manner set forth herein, including:

///

a) Omitting the disclosure of Fellner's felony convictions of conspiracy and federal mail fraud to investors of Strategic, in violation of the mandatory disclosure requirements of SEC's Rule 506 of Regulation D;

b) Misrepresenting or falsely portraying Strategic's ownership of a revenue-generating marijuana cultivation facility in Teller County, Colorado, in January 2014, when in fact, it did not have, nor did it ever have, the ability to operate in the marijuana business space or legally generate revenue from the sale of marijuana generated from its purported cultivation facility in Teller County, Colorado;

c) Mischaracterizing to Strategic's investors its purchase of Bearpot's assets as the acquisition of "an existing" marijuana cultivation facility in Teller County, Colorado, when in fact, Bearpot had no such facility – the purported cultivation facility was instead a rented two-story house in a residential area of Teller County;

d) Failing to disclose the fact that applicable laws prohibited Bearpot from having a facility in Teller County, Colorado because: (i) Teller County Ordinance #18, effective as of March 2013, prohibited the licensing and operation of, among other things, marijuana cultivation facilities, (ii) under various Colorado state laws, commercial medical marijuana cultivation required a license, which neither Bearpot, nor Defendants, or their officers, ever had, and (iii) Teller County zoning regulations did not permit commercial marijuana grow houses in the residential area where Bearpot's purported facility was located;

e) Falsely portraying Bearpot and Strategic as having both the legal and financial potential to have a functioning marijuana cultivation facility using false revenue and growth projections;

f) Falsely portraying Strategic as having the requisite licensure, funding, and other corporate infrastructure needed to run a successful marijuana-related business in January 2014;

g) Failing to disclose in or on Strategic's Form 1-A offering documents filed with the SEC that Strategic used investor proceeds to enter the marijuana business,

when it had actually—at that point—procured funds for the purpose of investing in video production/social media ventures;

h) Failing to file accurate 1-A forms with the SEC;

i) Failing to disclose to investors of Strategic, including Plaintiff (who continued making investment payments under the Note into December 2016) that Strategic decided to exit the marijuana business in April 2014;

j) Failing to disclose to investors of Defendant Strategic that, in August 2014, the company was being investigated by the SEC;

k) Failing to inform Strategic's investors that, in February 2016, the SEC initiated a lawsuit against Fellner and Strategic (but continued accepting investment payments as if the SEC Action did not exist); and,

l) Falsely representing to Plaintiff, in April 12, 2016, that "things are progressing well" and that Defendants were "optimistic about growth and sales," when in fact Strategic was not positioned for growth.

74.   Plaintiff purchased an aggregate of 3,005,000,000 shares of common stock in Strategic from Defendants , and each of them, based on Defendants' false and misleading communications.

75.   Plaintiff has suffered damages as a result of Defendants , and each of their actions, in an amount to be established at trial.

76.   As a result of the material misrepresentations, Plaintiff is entitled to rescind the above-described purchases and have the consideration given repaid with interest thereon.

77.   Plaintiff, before entry of judgment, will tender to Defendants, and each of them, the units which they respectively hold and which were purchased from Defendants, and each of them, and on which, to date, Plaintiff has received Zero Dollars ($0.00) as total income.

///

///

## FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation Against Defendants)

78.     Plaintiff repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 77, inclusive, above and incorporates the same herein in full.

79.     When Defendants and each of them, publically made the material representations described herein to Plaintiff and to potential investors of Defendant Strategic, they had no reasonable ground for believing those statements to be true, including the following:

a) Omitting the disclosure of Fellner's felony convictions of conspiracy and federal mail fraud to investors of Strategic, in violation of the mandatory disclosure requirements of SEC's Rule 506 of Regulation D;

b) Misrepresenting or falsely portraying Strategic's ownership of a revenue-generating marijuana cultivation facility in Teller County, Colorado, in January 2014, when in fact, it did not have, nor did it ever have, the ability to operate in the marijuana business space or legally generate revenue from the sale of marijuana generated from its purported cultivation facility in Teller County, Colorado;

c) Mischaracterizing to Strategic's investors its purchase of Bearpot's assets as the acquisition of "an existing" marijuana cultivation facility in Teller County, Colorado, when in fact, Bearpot had no such facility – the purported cultivation facility was instead a rented two-story house in a residential area of Teller County;

d) Failing to disclose the fact that applicable laws prohibited Bearpot from having a facility in Teller County, Colorado because: (i) Teller County Ordinance #18, effective as of March 2013, prohibited the licensing and operation of, among other things, marijuana cultivation facilities, (ii) under various Colorado state laws, commercial medical marijuana cultivation required a license, which neither Bearpot, nor Defendants, or their officers, ever had, and (iii) Teller County zoning regulations did not permit commercial marijuana grow houses in the residential area where Bearpot's purported facility was located;

e) Falsely portraying Bearpot and Strategic as having both the legal and financial potential to have a functioning marijuana cultivation facility using false revenue and growth projections;

f) Falsely portraying Strategic as having the requisite licensure, funding, and other corporate infrastructure needed to run a successful marijuana-related business in January 2014;

g) Failing to disclose in or on Strategic's Form 1-A offering documents filed with the SEC that Strategic used investor proceeds to enter the marijuana business, when it had actually—at that point—procured funds for the purpose of investing in video production/social media ventures;

h) Failing to file accurate 1-A forms with the SEC;

i) Failing to disclose to investors of Strategic, including Plaintiff (who continued making investment payments under the Note into December 2016) that Strategic decided to exit the marijuana business in April 2014;

j) Failing to disclose to investors of Defendant Strategic that, in August 2014, the company was being investigated by the SEC;

k) Failing to inform Strategic's investors that, in February 2016, the SEC initiated a lawsuit against Fellner and Strategic (but continued accepting investment payments as if the SEC Action did not exist); and,

l) Falsely representing to Plaintiff, in April 12, 2016, that "things are progressing well" and that Defendants were "optimistic about growth and sales," when in fact Strategic was not positioned for growth.

80.    Defendants, and each of them, made the above-stated material representations intending that Plaintiff would rely upon them, or with gross negligence as to whether they would so act, and expecting that Plaintiff would do so, in order to induce Plaintiff to invest in Defendant Strategic.

81.    At the time Defendants, and each of them, made the above-referenced material representations to Plaintiff, which representations were a substantial factor in

Plaintiff's decision to invest, and Plaintiff believed the material representations of Defendants, and each of them, to be true and correct, and reasonably relied on them when investing in Defendant Strategic.

82.   Had Plaintiff known all the facts, it would not have invested in Defendant Strategic.

83.   As a direct and proximate result of Defendants, and each of their unreasonable actions, and Plaintiff's' good-faith and justifiable reliance thereon, Plaintiff incurred special and general damages in an amount to be proven at the time of trial.

## FIFTH CAUSE OF ACTION

### (Fraud in the Inducement Against Defendants)

84.   Plaintiff repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 83, inclusive, above and incorporates the same herein in full.

85.   As detailed herein, Plaintiff alleges that between 2012 through 2016, Defendants, and each of them, made material false promises that harmed Plaintiff, and Defendants, and each of them, provided Plaintiff with false information during the course of Defendants', and each of their, capital-raising efforts on behalf of Defendant Strategic, in order to induce Plaintiff to invest funds in Defendant Strategic.

86.   These promises and false information included the following:

a) Omitting the disclosure of Fellner's felony convictions of conspiracy and federal mail fraud to investors of Strategic, in violation of the mandatory disclosure requirements of SEC's Rule 506 of Regulation D;

b) Misrepresenting or falsely portraying Strategic's ownership of a revenue-generating marijuana cultivation facility in Teller County, Colorado, in January 2014, when in fact, it did not have, nor did it ever have, the ability to operate in the marijuana business space or legally generate revenue from the sale of marijuana generated from its purported cultivation facility in Teller County, Colorado;

c) Mischaracterizing to Strategic's investors its purchase of Bearpot's assets as the acquisition of "an existing" marijuana cultivation facility in Teller County, Colorado, when in fact, Bearpot had no such facility – the purported cultivation facility was instead a rented two-story house in a residential area of Teller County;

d) Failing to disclose the fact that applicable laws prohibited Bearpot from having a facility in Teller County, Colorado because: (i) Teller County Ordinance #18, effective as of March 2013, prohibited the licensing and operation of, among other things, marijuana cultivation facilities, (ii) under various Colorado state laws, commercial medical marijuana cultivation required a license, which neither Bearpot, nor Defendants, or their officers, ever had, and (iii) Teller County zoning regulations did not permit commercial marijuana grow houses in the residential area where Bearpot's purported facility was located;

e) Falsely portraying Bearpot and Strategic as having both the legal and financial potential to have a functioning marijuana cultivation facility using false revenue and growth projections;

f) Falsely portraying Strategic as having the requisite licensure, funding, and other corporate infrastructure needed to run a successful marijuana-related business in January 2014;

g) Failing to disclose in or on Strategic's Form 1-A offering documents filed with the SEC that Strategic used investor proceeds to enter the marijuana business, when it had actually—at that point—procured funds for the purpose of investing in video production/social media ventures;

h) Failing to file accurate 1-A forms with the SEC;

i) Failing to disclose to investors of Strategic, including Plaintiff (who continued making investment payments under the Note into December 2016) that Strategic decided to exit the marijuana business in April 2014;

j) Failing to disclose to investors of Defendant Strategic that, in August 2014, the company was being investigated by the SEC;

k) Failing to inform Strategic's investors that, in February 2016, the SEC initiated a lawsuit against Fellner and Strategic (but continued accepting investment payments as if the SEC Action did not exist); and,

l) Falsely representing to Plaintiff, in April 12, 2016, that "things are progressing well" and that Defendants were "optimistic about growth and sales," when in fact Strategic was not positioned for growth.

87. These promises and representations were material to the transaction and Plaintiff would not have invested in Defendant Strategic if these promises had not been made. Thus, Plaintiff was induced to invest in Defendant Strategic by these promises and representations.

88. Defendants, and each of them, did not intend to perform these promises when they made them, and Defendants, and each of them, knew that such representations were false when made.

89. Defendants, and each of them, intended that Plaintiff rely on their promises and representations, and Plaintiff did in fact reasonably and justifiably rely on these promises and representations.

90. Plaintiff's reliance on the representations of Defendants, and each of them, was justified, because Plaintiff believed that Defendants, and each of them, had good contacts, infrastructure, capital and know-how to thrive in newly developing marijuana industry, and that Defendants, and each of them, demonstrated, through their representations and public statements that the venture was a good idea, well-planned, and well financed, and further that Defendants, and each of them knew how to navigate the legal requirements of such a venture, and Plaintiff did not have any reason or cause to suspect that such representations were not true.

91. Plaintiff's reliance Defendants', and each of their, material promises and representations was a substantial factor in the harm caused to Plaintiff.

92. Defendants, and each of them, failed to perform their promises.

///

93.   Plaintiff has been injured and suffered monetary damages as a result of Defendants', and each of their, grossly negligent and/or willful misrepresentations and failure to perform their promises, in an amount to be shown according to proof at the time of trial.

94.   The aforementioned conduct of Defendants, and each of them, was an intentional and material misrepresentation, deceit and concealment of material facts known to Defendants, and each of them, and was done with the intention, or with the grossly negligent omission, on the part of Defendants, and each of them, thereby depriving Plaintiff of the opportunity to refuse to invest in Defendant Strategic, and their legal rights and otherwise causing them injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights, so as to justify an award of exemplary and punitive damages.

95.   As a result of such material misrepresentations and false promises, Plaintiff is entitled to rescind the above-described investments and have the consideration given repaid with interest thereon.

## SIXTH CAUSE OF ACTION

### (Breach of Fiduciary Duty Against Fellner and Does 1 through 20, inclusive)

96.   Plaintiff repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 95, inclusive, above and incorporates the same herein in full.

97.   As corporate managers of Defendant Strategic, and by virtue of his control of the business affairs of Strategic, Defendant Fellner and the Doe Defendants, and each of them, owed fiduciary duties of the utmost good-faith, trust, loyalty, honesty and care to Strategic's investors and members, including Plaintiff, and to act in the best interests of Strategic, its members and its investors, even when doing so was not in Defendants' best interest.

98.   By their willful malfeasance through self-dealing and improper and illicit use of the funds, Plaintiff invested in Strategic; Defendant Fellner and the Doe Defendants, and each of them, intentionally and willfully breached their fiduciary duties

to Strategic's investors and members, in multiple ways including, but not limited, to the following:

   a) Omitting the disclosure of Fellner's felony convictions of conspiracy and federal mail fraud to investors of Strategic, in violation of the mandatory disclosure requirements of SEC's Rule 506 of Regulation D;

   b) Misrepresenting or falsely portraying Strategic's ownership of a revenue-generating marijuana cultivation facility in Teller County, Colorado, in January 2014, when in fact, it did not have, nor did it ever have, the ability to operate in the marijuana business space or legally generate revenue from the sale of marijuana generated from its purported cultivation facility in Teller County, Colorado;

   c) Mischaracterizing to Strategic's investors its purchase of Bearpot's assets as the acquisition of "an existing" marijuana cultivation facility in Teller County, Colorado, when in fact, Bearpot had no such facility – the purported cultivation facility was instead a rented two-story house in a residential area of Teller County;

   d) Failing to disclose the fact that applicable laws prohibited Bearpot from having a facility in Teller County, Colorado because: (i) Teller County Ordinance #18, effective as of March 2013, prohibited the licensing and operation of, among other things, marijuana cultivation facilities, (ii) under various Colorado state laws, commercial medical marijuana cultivation required a license, which neither Bearpot, nor Defendants, or their officers, ever had, and (iii) Teller County zoning regulations did not permit commercial marijuana grow houses in the residential area where Bearpot's purported facility was located;

   e) Falsely portraying Bearpot and Strategic as having both the legal and financial potential to have a functioning marijuana cultivation facility using false revenue and growth projections;

   f) Falsely portraying Strategic as having the requisite licensure, funding, and other corporate infrastructure needed to run a successful marijuana-related business in January 2014;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

g) Failing to disclose in or on Strategic's Form 1-A offering documents filed with the SEC that Strategic used investor proceeds to enter the marijuana business, when it had actually—at that point—procured funds for the purpose of investing in video production/social media ventures;

h) Failing to file accurate 1-A forms with the SEC;

i) Failing to disclose to investors of Strategic, including Plaintiff (who continued making investment payments under the Note into December 2016) that Strategic decided to exit the marijuana business in April 2014;

j) Failing to disclose to investors of Defendant Strategic that, in August 2014, the company was being investigated by the SEC;

k) Failing to inform Strategic's investors that, in February 2016, the SEC initiated a lawsuit against Fellner and Strategic (but continued accepting investment payments as if the SEC Action did not exist); and,

l) Falsely representing to Plaintiff, in April 12, 2016, that "things are progressing well" and that Defendants were "optimistic about growth and sales," when in fact Strategic was not positioned for growth.

99.   Defendant Fellner and the Doe Defendants, and each of their acts, omissions, misrepresentations and concealments, as alleged above, constitute breaches of their fiduciary duties, all proximately causing the injuries and damages alleged herein.

100.   As a direct and proximate result of the aforesaid breach of fiduciary duty, Plaintiff has been damaged, in an amount separate and apart from the damages suffered by Strategic as an entity, in an amount to be established according to proof at the time of trial.

101.   The aforementioned conduct of Defendant Fellner and the Doe Defendants, and each of them, was engaged in by Defendant Fellner and the Doe Defendants, and each of them, with fraud, oppression and malice, with the intention on the part of Defendant Fellner and the Doe Defendants, and each of them, of thereby depriving

Plaintiff of its legal rights and otherwise causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION

### (Constructive Trust Against Defendants)

102.   Plaintiff repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 101, inclusive, above and incorporates the same herein in full.

103.   Plaintiff is informed and believes, and on that basis herein alleges, that Defendants, and each of them, are not the actual owner(s) of the funds invested by Plaintiff in Strategic, and that Defendants, and each of them, converted the money invested by Plaintiff and allegedly allocated to establish, construct, and/or operate Strategic.  Plaintiff is informed and believes, and on that basis herein alleges, that Defendants, and each of them, are in possession of monies, which is the property of Plaintiff, and as such, Defendants, and each of them, has become an involuntary trustee for the benefit of Plaintiff.

104.   Plaintiff is informed and believes, and on that basis herein alleges, that Defendants, and each of them, has received, improperly retained or converted money from Plaintiff, and which is the property of Plaintiff, and that Defendants, and each of them, are currently in possession of that sum, the amount of which will be established according to proof at the time of trial, plus interest charged thereon at the maximum legal rate from the date the money was lent.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants Andrew Fellner, an individual; Strategic Global Investments, Inc., a Delaware corporation; and Does 1 though 20, inclusive, as follows:

///

///

///

**As to All Causes of Action**

1.    For general, compensatory and consequential damages according to proof;

2.    For costs of suit incurred herein;

3.    For pre- and post- judgment interest according to proof;

4.    For exemplary and punitive damages; and

5.    For such other and further relief as the Court deems just and proper.

**As to the Fourth Cause of Action**

1.    For general, compensatory and consequential damages according to proof;

2.    For costs of suit incurred herein;

3.    For pre- and post- judgment interest according to proof; and

4.    For such other and further relief as the Court deems just and proper.

**As to the Fifth Cause of Action**

1.    For general, compensatory and consequential damages according to proof;

2.    For a rescission of all of the shares and/or units Plaintiff purchased;

3.    For costs of suit incurred herein;

4.    For pre- and post- judgment interest according to proof;

5.    For exemplary and punitive damages; and

6.    For such other and further relief as the Court deems just and proper.

**As to the First, Second and Third Causes of Action**

1.    For general, compensatory and consequential damages according to proof;

2.    For a rescission of all of the shares and/or units Plaintiff purchased;

3.    For costs of suit incurred herein;

4.    For pre- and post- judgment interest according to proof; and

5.    For such other and further relief as the Court deems just and proper.

///

///

///

///

1

### As to the Seventh Cause of Action

2      1.     For the imposition of a constructive trust for the benefit of Plaintiff for the

3  full amount  of monies due and owing to Plaintiff.

4      2.     For such other and further relief as the Court deems just and proper.

5

Dated: July 2, 2018                 **ARENDSEN CANE MOLNAR LLP**

6

7

8                                      /s/ Christian S. Molnar

Christian S. Molnar, Esq., attorneys for

9                          Highlander Holdings, Inc., a California

10                       corporation

11

### REQUEST FOR JURY TRIAL

12

13  Plaintiff hereby demands trial by jury.

14

15

16  Dated: July 2, 2018               **ARENDSEN CANE MOLNAR LLP**

17

18                                        /s/ Christian S. Molnar

Christian S. Molnar, Esq., attorneys for

19                          Highlander Holdings, Inc., a California

20                       corporation

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL