1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

11   HIGHLANDER HOLDINGS, INC.,            Case No.:  3:18-cv-1506-AHG
12                          Plaintiff,
                                          **ORDER GRANTING IN PART AND**
13   v.                                   **DENYING IN PART PLAINTIFF'S**
                                          **MOTION TO COMPEL AND FOR**
14   ANDREW FELLNER, *et al.*,            **SANCTIONS**
15                          Defendants.
                                          **[ECF No. 63]**
16

17        This matter comes before the Court on Plaintiff's Motion to Compel Completion of

18   Deposition of Defendant, Andrew Fellner, and for an Award of Monetary Sanctions in the

19   Amount of $13,867.42, as well as for the Appointment of a Special Master/Discovery

20   Referee to Preside over Same, or, in the Alternative, for Terminating Sanctions Against

21   Defendant for his Repeated Failure to Cooperate in Discovery. ECF No. 63.

22   **I.    BACKGROUND**

23        Plaintiff filed this action on July 2, 2018, asserting claims of securities fraud and

24   related state and common law claims against Defendant Strategic Global Investments, Inc.

25   ("Strategic"), and Defendant Andrew Fellner, whom Plaintiff contends was the controlling

26   shareholder, CEO, secretary, treasurer, and sole director of Strategic at all times relevant

27   to the Complaint. *See* ECF No. 1. Defendant Fellner has been proceeding *pro se* in this

28   action since May 29, 2019. ECF No. 38.

1

According to the Complaint, between October 2012 and December 1, 2016, Plaintiff invested a total of $500,000 in Strategic, and owned a total of 3,005,000,000 shares of common stock in the company. ECF No. 1 ¶¶ 11-13, 34. Plaintiff contends that, in the course of obtaining Plaintiff's investments in Strategic, Defendants made numerous material misrepresentations and omissions in violation of Section 10(b) and Rule 10b-5(b) of the Securities Exchange Act of 1934, Section 12(2) of the Securities Act of 1933, and California Corporations Code §§ 25401 and 25501.[1] *Id.* ¶¶ 55-60. The purported misrepresentations and omissions include, *inter alia*, the non-disclosure of Defendant Fellner's 1982 felony convictions of conspiracy and federal mail fraud, material misrepresentations regarding Strategic's ownership of a revenue-generating marijuana cultivation facility in Colorado, failing to disclose to investors Strategic's decision to exit the marijuana business in April 2014, while still collecting investment payments on that venture from Plaintiff until December 2016, and failing to disclose to investors that the Securities and Exchange Commission initiated an investigation against Strategic in August 2014 and a lawsuit against Strategic in February 2016. *Id.* ¶¶ 60, 67, 73.

Both Defendants had default entered against them on two separate occasions, first in October 2018 and again in May 2019. ECF Nos. 7, 8, 35, 36. The Court set aside the second entry of default against Defendant Fellner on July 25, 2019. ECF No. 44. Strategic remains in default. ECF No. 35. After the entry of default against Fellner was set aside, the previously assigned Magistrate Judge set an Early Neutral Evaluation ("ENE") and Case Management Conference ("CMC") for October 22, 2019. ECF No. 45. Following transfer to the undersigned, the ENE and CMC were reset for December 4, 2019. ECF No. 47. The CMC took place as scheduled, although the ENE was continued to January 23, 2020 at the parties' joint request. ECF Nos. 50, 52.

---

[1] Based on the same allegations, Plaintiff also brings state common-law claims against Defendants of negligent misrepresentation, fraud in the inducement, breach of fiduciary duty, and constructive trust. ECF No. 1 ¶¶ 78-104.

The Court entered a Scheduling Order on December 5, 2019, which set forth the dates and deadlines discussed with the parties during the CMC, including a fact discovery cutoff date of March 1, 2020. ECF No. 53. Plaintiff served its First Set of Requests for Production of Documents on Defendant Fellner on December 23, 2019,[2] and Defendant Fellner served his discovery responses on January 28, 2020. ECF No. 63 at 9. Plaintiff objected to Defendant Fellner's responses as deficient, and, following meet-and-confer efforts, Defendant Fellner served supplemental responses on February 22, 2020. *Id.* Plaintiff still considered the supplemental responses to be "woefully deficient." *Id.*

On January 24, 2020, the parties agreed to a date for Defendant Fellner's deposition: February 28, 2020. Plaintiff noticed the deposition the same day, and also served a Request for Production of Documents along with the deposition notice. *Id.* On February 24, 2020, Defendant Fellner served objections to the Request for Production attached to the deposition notice, which Plaintiff contends were "untimely and wrongful." *Id.*

Turning to Defendant Fellner's deposition conduct, Defendant Fellner produced no documents at the February 28, 2020 deposition and ultimately walked out after approximately one hour and 45 minutes. *Id.* at 9-10; ECF No. 63-4 (Tr. of Fellner Dep.). Plaintiff characterizes Defendant Fellner's conduct as follows:

> Throughout the deposition Defendant Fellner failed and refuse to provide responses to the majority of questions and instead launched into profanity laced tirades, during which he professed a contempt for everything from the discovery process, to the Federal Rules of Civil Procedure and Evidence, and continuously invoked [the] Fifth Amendment to the Constitution improperly. In several instances, Defendant Fellner even made a number of personal attacks against [Plaintiff's counsel, Christian] Molnar. . . . [U]ltimately, the deposition could not be completed by Plaintiff's counsel, due to Defendant Fellner storming out of his deposition . . . . Prior to Defendant Fellner storming out of his deposition, Defendant Fellner's specially appearing attorney, Ms.

---

[2] Defendant Fellner had previously served his Rule 26(a)(1) initial disclosures on Plaintiff on April 24, 2019, although Plaintiff asserts he never provided any documents in connection with the initial disclosures. ECF No. 63 at 3, 8.

Janine Menhennet, stormed out of the deposition, approximately forty (40) minutes before Defendant Fellner followed suit, and likely due to Defendant Fellner's failure to heed her advice to conduct himself in a respectable manner at the deposition.

ECF No. 63 at 9-10. Plaintiff argues that by refusing to answer most of the questions, failing to produce any of the documents requested, and invoking the Fifth Amendment without substantial justification for doing so, Defendant Fellner demonstrated bad-faith behavior and an "intent to obstruct the discovery process" that is "tantamount to contempt for the Court." *Id.* at 17.

Discovery closed two days after the truncated deposition on March 1, 2020. Approximately six weeks later, Plaintiff sent a meet-and-confer letter regarding these discovery issues to Defendant Fellner on April 10, 2020. *Id.* at 14. According to Plaintiff, Defendant responded on April 12, 2020, "refusing to provide a substantive response and stating that Counsel was trying to bully him and refusing to provide any further response until April 20, 2020." *Id.* Plaintiff sent another meet-and-confer letter on April 13, 2020, and sent an email to the Court on the same day to raise the deposition dispute with the Court. *Id.*[3] In the emailed request, Plaintiff's counsel asked that the Court compel Defendant Fellner to attend and complete a second day of deposition following his early

---

[3] Pursuant to the undersigned's Chambers Rules, to raise a discovery dispute with the Court, parties must (1) meet and confer to attempt to resolve the dispute without court intervention; and (2) if meet-and-confer attempts fail, send a joint email to chambers seeking a telephonic conference with the Court to discuss the dispute. If a dispute arises during a deposition, the parties must also meet and confer before contacting chambers to seek an immediate ruling from the Court. If the Court is not immediately available, the parties must proceed with the deposition in other areas of inquiry until the Court is able to respond. The deadline to bring any discovery dispute to the Court's attention is 45 days after either (1) the date of service of the written discovery response in dispute; or (2) the date that the portion of the deposition transcript in dispute is completed. Failure to meet this deadline bars a party from filing a corresponding discovery motion. No discovery motion may be filed until the Court has conducted the pre-motion telephonic conference on the dispute, unless the movant has obtained leave of Court. *See* Chmbr. R. at 3.

departure from the February 28, 2020 deposition. In accordance with Chambers Rules, the Court held a telephonic conference regarding the dispute on April 22, 2020. ECF No. 58. Based on the discussion during that conference, the Court determined that motion practice was warranted on the issues of whether to compel Defendant Fellner's deposition and whether to issue sanctions, and set a briefing schedule for Plaintiff's motion on those issues. ECF No. 59. The present motion followed.

Based on its contentions, Plaintiff requests that the Court: (1) compel Defendant Fellner to appear for a second day of deposition and to produce responsive documents; (2) sanction Defendant Fellner in the amount of $13,867.42, to compensate Plaintiff for the fees and costs associated with the prior session of the deposition and preparation of the present motion; (3) appoint a discovery referee, at Defendant Fellner's expense, to oversee the next session of the deposition; (4) require Defendant Fellner to attend the next session at his own expense. In the alternative, Plaintiff requests that the Court impose terminating sanctions by striking Defendant Fellner's Answer and entering default against him. *Id.* at 10, 20-21.

In response, Defendant Fellner first raises a non-discovery, dispositive matter—namely, that he cannot be held liable for any actions committed during the course and scope of his employment with Strategic and should be dismissed as a party to this action. ECF No. 69 at 2. Somewhat related to the issue of document production, Defendant Fellner also asserts that he has not retained any documents or copies of documents related to Strategic since non-party Garland Harris took over the company.[4] *Id.*

As for Plaintiff's contentions regarding Defendant Fellner's discovery responses, Defendant Fellner argues that Plaintiff's counsel "did not accept the fact that Fellner did not have any of the requested documents in his possession and continually bullied and

---

[4] Mr. Harris died during the pendency of this litigation, and Defendant Fellner contends that Plaintiff unfairly turned its attention towards him to "take the fall" for Plaintiff's "bad investment" because it was not possible to pursue claims against Mr. Harris. *Id.* at 2, 3.

harassed Fellner." *Id.* at 3. Defendant Fellner similarly asserts that Plaintiff's counsel "harassed and bullied" him because of Fellner's objections to the discovery requests. *Id.* Generally, Defendant Fellner characterizes Plaintiff's counsel's conduct as "bullying," "harassing," "attacking," and "disrespecting" him, and "taking a great deal of advantage" of the fact that Fellner is proceeding *pro se*.

Defendant's Fellner's arguments regarding his deposition conduct are in the same vein. Fellner explains he hired an attorney to specially appear on his behalf for the deposition due to "the past behavior of Molnar[.]" *Id.* Defendant Fellner contends that Mr. Molnar "continually asked questions completely unrelated to the case" during the deposition, and that he answered a number of questions "until he felt the line of questioning was being taken off the matter and was attempting to set up Fellner to incriminate him and use testimony unrelated to the matter at trial." *Id.* at 4, 5. Defendant Fellner argues he properly invoked his Fifth Amendment right against self-incrimination at that point. *Id.* at 5. Defendant Fellner also makes further accusations against Mr. Molnar of bullying and harassing him, as well as threatening, bullying, and intimidating his specially appearing attorney during the deposition. *Id.* at 6. He avers that Mr. Molnar's conduct was unethical, caused Defendant Fellner to be "fearful for his personal safety and well-being[,]" and that taking another deposition would be detrimental to his health. *Id.* at 7. Defendant Fellner also notes that his doctor has advised him to self-isolate during the current COVID-19 pandemic. *Id.*

Finally, Defendant Fellner raises a new issue in the response regarding Plaintiff's purported failure to respond to any of Defendant Fellner's propounded discovery. *Id.*

Based on these contentions, Defendant Fellner requests that the Court: (1) issue an order disallowing Plaintiff from taking any further deposition of Fellner; (2) require Mr. Molnar to pay Defendant Fellner $1,000 to reimburse him for the cost of his specially appearing attorney, Ms. Menhennet; (3) disallow Plaintiff from pursuing any further discovery in the case; (4) sanction Mr. Molnar for violations of the Rules of Professional

3:18-cv-1506-AHG

Conduct; and (5) compel Plaintiff to respond to Defendant Fellner's discovery requests without objections. *Id.* at 7-8.

In its Reply, Plaintiff argues that Defendant Fellner failed to oppose the majority of Plaintiff's Motion on its merits, and the Court should thus grant all unaddressed requests automatically pursuant to Civ.LR 7.1(f)(3)(C). Specifically, Plaintiff asserts Defendant failed to address whether Plaintiff showed good cause to amend the scheduling order, whether appointment of a discovery referee is proper, whether Defendant Fellner's Answer should be stricken and terminating sanctions imposed, and the propriety of failing to produce documents for the deposition or leaving the deposition early. ECF No. 67 at 2-4.

Additionally, Plaintiff reiterates that Defendant Fellner's invocations of the Fifth Amendment privilege were improper and denies that Mr. Molnar's line of questioning or any of his deposition conduct were improper. *Id.* at 4-6. Plaintiff states that Defendant Fellner has mischaracterized Ms. Menhennet's declaration to suggest that she feared for her safety rather than fearing that she might face monetary sanctions, and further argues that Ms. Menhennet's belief that Mr. Molnar was threatening sanctions is unfounded. *Id.* at 8-9. As for Defendant Fellner's argument that Plaintiff has taken advantage of his *pro se* status, Plaintiff notes that Defendant Fellner was represented by an attorney during the deposition, and that he is a former attorney himself and thus not a "regular" *pro se* party. *Id.* at 8.

In reply to Defendant's discussion in his Response regarding the fact that Defendant Fellner has no documents related to Strategic in his possession, Plaintiff raises for the first time an argument that Defendant Fellner has committed spoliation by failing to preserve evidence for the present civil suit by one of Strategic's investors, which should have been reasonably foreseeable in February 2016 once the SEC initiated a suit against Fellner and Strategic. *Id.* at 6-8.

Plaintiff opposes Defendant Fellner's request for sanctions because Mr. Molnar did not violate any ABA Model Rule, and any such violation would not create a presumption that he had breached a legal duty in any event. Plaintiff also opposes Defendant Fellner's

request that the Court compel Plaintiff's discovery responses as improperly raised in a response brief and unsupported by the facts, because Defendant Fellner did not timely or properly serve his discovery requests. *Id.* at 9-11.

Finally, Plaintiff argues that the deposition should take place in person, and Defendant Fellner's reliance on the COVID-19 pandemic is a "tactic" to "stall and obstruct" discovery.

## II.   APPLICABLE LEGAL STANDARDS

Compelling further document production or a second day of Defendant Fellner's deposition would require reopening fact discovery. Under Fed. R. Civ. P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "Good cause" is a non-rigorous standard that has been construed broadly across procedural and statutory contexts. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010). The good cause standard focuses on the diligence of the party seeking to amend the scheduling order and the reasons for seeking modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16, advisory committee's notes to 1983 amendment. Therefore, "a party demonstrates good cause by acting diligently to meet the original deadlines set forth by the court." *Merck v. Swift Transportation Co.*, No. CV-16-01103-PHX-ROS, 2018 WL 4492362, at *2 (D. Ariz. Sept. 19, 2018).

Rule 30 governs depositions by oral examination. Ordinarily, a party may take a deposition of any person, including a party, without leave of court. Fed. R. Civ. P. 30(a)(1). However, a party must obtain leave of court "and the court ***must*** grant leave consistent with Rule 26(b)(1) and (2)" if the parties have not stipulated to the deposition ***and*** one of three additional conditions applies, including that the deponent has already been deposed in the case. Fed. R. Civ. P. 30(a)(2)(A)(ii) (emphasis added).

Further, "[u]nless otherwise stipulated or ordered by the court," depositions are presumptively limited "to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). But the "court ***must***

allow additional time consistent with Rule 26(b)(1) and (b)(2)[5] if needed to fairly examine the deponent or if the deponent . . . impedes or delays the examination." *Id.* (emphasis added).

Rule 30 also contemplates the need to suspend a deposition. "At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). The motion to terminate or limit the deposition "must be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." *Id.* In addressing such a motion, the Court "may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)." Fed. R. Civ. P. 30(d)(3)(B). Rule 26(c), in turn, governs protective orders, and allows any person from whom discovery is sought to move the Court for an order protecting the person or party from "annoyance, embarrassment, oppression, or undue burden or expense," including, *inter alia*, an order that forbids the disclosure or discovery at issue, allocates the expenses for the discovery, forbids inquiry or limits the scope of discovery into certain matters, or designates the persons who may be present while the discovery is conducted. Fed. R. Civ. P. 26(c)(1).

Moving for a protective order under Rule 26(c) is generally the proper recourse if a party believes he has good cause not to appear for a deposition. *See Paige v. Consumer Programs, Inc.*, 248 F.R.D. 272, 275 (C.D. Cal. 2008). "For good cause [for a protective order] to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

---

[5] Rule 26(b)(1) and (b)(2) govern the permissible scope of discovery and the limitations on frequency and extent of discovery.

## III.   DISCUSSION

### A. <u>Whether to Compel Discovery Responses</u>

The Court denies as untimely both parties' requests to compel document production and other discovery responses. As discussed above, Plaintiff first raised the issues regarding Defendant Fellner's purportedly insufficient January 28, 2020 responses and February 22, 2020 supplemental responses to Plaintiff's First Set of Requests for Production of Documents in the motion before the Court, filed on May 7, 2020.

In arguing that it has shown good cause to amend the Scheduling Order to compel the documents at issue, Plaintiff contends that until the Court issued the Scheduling Order on December 5, 2019, "pursuant to Rule 26(f), Plaintiff was unable to conduct any discovery in this case." ECF No. 63 at 9. This assertion is incorrect. As an initial matter, although Rule 26(d) does prohibit a party from seeking discovery prior to the Rule 26(f) conference, there is no similar provision in the Rules preventing the parties from conducting discovery until after the Scheduling Order is issued. Additionally, after the Court set aside the entry of default against Defendant Fellner in July 2019, the CMC in this matter was originally scheduled for October 22, 2019, and the parties were required to complete their Rule 26(f) conference by *September 18, 2019*. ECF No. 45 at 5. The case was not transferred to the undersigned until after that deadline passed, on September 19, 2019. ECF No. 46. Following transfer, on September 23, 2019, the Court reset the CMC for December 4, 2019. ECF No. 47. Although the order resetting the CMC was issued five days after the parties should have already completed their Rule 26(f) conference, the Court set a new deadline of November 13, 2019 to meet and confer under Rule 26(f) as part of its standard schedule, overlooking that the parties should have already completed the conference by that point. Therefore, pursuant to their Court-ordered obligations, the parties should have conducted the Rule 26(f) conference by September 18, 2019 and were free to conduct discovery after doing so. And if for some reason the parties waited to meet and confer until the second deadline of November 13, 2019, at the very least Plaintiff could have conducted discovery at that point.

More importantly, the deadline to meet and confer pursuant to Rule 26(f) only governs the *last* day by which the parties must meet and confer—nothing in the Rules or in the Court's orders prohibited the parties from meeting and conferring under Rule 26(f) and propounding discovery requests earlier than that date. Indeed, Rule 26(f)(1) requires the parties to "confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." It is unclear why the parties waited more than four months after the entry of default against Defendant Fellner was set aside on July 25, 2019 before conferring under Rule 26(f) or conducting discovery in this case. In setting the fact discovery deadline in the Scheduling Order for March 1, 2020, the Court took into account that the original CMC date had been delayed by approximately six weeks following transfer, and accordingly cut short the ordinary four-month discovery track applied in most cases in this Court.

Nonetheless, Plaintiff argues that after the CMC, it "moved with alacrity to propound discovery to the Defendant." ECF No. 63 at 12. Plaintiff also argues that "Defendant Fellner is responsible for any and all delay in Plaintiff taking his deposition and conducting substantive written discovery." Finally, Plaintiff notes that Defendant Fellner "has failed to meet and confer with Plaintiff to jointly move to continue the pretrial dates, necessitating the motion herein." *Id.* at 13. However, with respect to Plaintiff's first argument, the applicable "good cause" standard does not concern how quickly discovery was served initially, but how diligently the moving party acted to comply with the existing case schedule. *Johnson*, 975 F.2d at 609. Notably, this standard would apply whether or not Defendant Fellner had joined in a motion to amend the case schedule by reopening discovery.

Further, with respect to the written discovery, it cannot be argued that Defendant Fellner is responsible for Plaintiff's failure to raise the issue of Defendant Fellner's purportedly deficient responses—served on January 28, 2020 and supplemented on February 22, 2020—until filing the Motion to Compel on May 7, 2020. Plaintiff's counsel did not raise any of these issues in the email to the Court on April 13, 2020, thus violating

the Court's procedures by raising them in the Motion. And even if counsel ***had*** raised these issues in the April 13, 2020 email, they still would have been untimely raised under the Court's deadline to bring discovery disputes to the Court's attention within 45 days after service of the disputed responses. In another failure of diligence, the first time Defendant Fellner raised the issue of Plaintiff's failure to respond to his discovery requests was in the response brief to Plaintiff's Motion. Consequently, both parties have failed to timely raise these issues, and the Court **DENIES** both parties' requests to compel discovery responses.

The only issue that was timely raised with the Court is whether to compel a further deposition of Defendant Fellner and to issue sanctions against him for his deposition conduct, since Plaintiff's counsel brought this issue to the Court's attention 45 days after the February 28, 2020 deposition. Accordingly, the Court will address that issue alone.[6]

## B. Whether to Compel Further Deposition of Defendant Fellner

The Court agrees that a second day of deposition of Defendant Fellner is plainly called for under Rule 30. *See* Fed. R. Civ. P. (30)(d)(1) ("The court must allow additional time . . . if the deponent . . . impedes or delays the examination.").

Having reviewed the deposition transcript, the Court finds that Defendant Fellner impeded the examination repeatedly. At the very start of the deposition, Mr. Fellner refused to answer simple questions about whether he ever practiced transactional law and repeatedly told Mr. Molnar to "look it up" because "[y]ou already know the answer" with respect to Defendant Fellner's resignation from the bar with charges pending, the nature of the charges, and whether he is a convicted felon. *See* ECF No. 63-4, Fellner Dep. 6:12-9:24. After a recess, however, Mr. Fellner cooperated with a number of lines of questioning, but even without the benefit of a video or audio recording, it is plain to the

---

[6] For similar reasons, the Court will not address: (1) Defendant Fellner's argument that he should be dismissed as a party to this action; or (2) Plaintiff's argument that Defendant Fellner has committed spoliation. New requests for affirmative relief are not properly raised in response or reply briefs.

Court that the mood in the room remained tense and combative:

> Q    How did you – how did you know Mr. Behtke?
> A    I used to do business with him.
> Q    What type of business?
> A    I don't know where we're going here. What are we doing? What's this got to do with anything?
> Q    You're actually here to answer questions. If you want to step outside with your attorney and have a colloquy or speak with her, consult with her, you're welcome to do that. But you're not here to pose questions or to offer editorial comments.
> A    I don't care why I'm here. You don't understand. I don't care. You care because you're getting a ton of money from your client. So I understand why you care, but I don't care.
> Q    Well, there's certain rules and certain requirements under the federal rules.
> A    And I don't care about those [certain] rules.
> Q    Could you allow me to talk?
> A    Not really.
> Q    Could we take turns?
> A    Well, I talk when I want.
> Q    If you talk while I talk, it's very hard for this young lady to take us both down.
> A    I know and I feel bad for her already because it's going to be that way all day.

*Id.*, Fellner Dep. 12:14-13:13.

Later, Mr. Fellner made several frivolous objections on the basis of the Fifth Amendment privilege. *See, e.g.*, Fellner Dep. 34:11-25 (stating, "To any other of your questions, I'm going to take the Fifth Amendment[,]" and proceeding to invoke the privilege in response to questions about whether he had lived in various areas in and around San Diego County); 40:5-23 (invoking the privilege in response to questions about whether he "lived in Alaska a year or two" and how long he practiced law before losing his license, and affirming that he was "going to take the Fifth and not answer every other question today"); 66:19-22 (invoking the privilege in response to whether he recognized a document).

Most significantly, a further deposition is warranted because of Defendant Fellner's

decision to leave the deposition after less than two hours had elapsed, without moving for a protective order under Rule 30(d)(3) or otherwise alerting the Court that he was choosing to terminate the deposition. That decision not only "impede[d]" the deposition; it torpedoed it. Accordingly, Plaintiff's motion to compel a second day of Defendant Fellner's deposition is **GRANTED**. The Court will reopen discovery for *45 days from the date of this Order* for the limited purpose of allowing Plaintiff to complete the deposition. Neither party may serve any other discovery requests during the reopened discovery period.

### C. <u>Whether to Appoint a Discovery Referee</u>

The Court finds appointment of a discovery referee unnecessary at this juncture. Rule 53 of the Federal Rules of Civil Procedure limits the scope of appointment of special masters to a narrow set of circumstances. *See* Fed. R. Civ. P. 53(a)(1). The only one relevant here is appointment to "address pretrial . . . matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). "A pretrial master should be appointed only when the need is clear." Fed. R. Civ. P. 53(a)(1) advisory committee's note to 2003 amendment.

The need for such appointment is not clear here. Plaintiff has not demonstrated that the Magistrate Judge cannot effectively or timely address Defendant Fellner's deposition conduct. Notably, the Chambers Rules[7] of the undersigned anticipate the potential need for court intervention in an ongoing deposition dispute:

> If a dispute arises during the course of a deposition, counsel must meet and confer prior to seeking any ruling from the Court. After meet and confer attempts have failed, counsel may call chambers to seek a ruling. If the Court is unable to review the matter at that moment, counsel should proceed with the deposition in other areas of inquiry and the Court will respond as soon as practicable.

---

[7] Judge Goddard's chambers rules are available at:
https://www.casd.uscourts.gov/judges/goddard/docs/Goddard%20Civil%20Pretrial%20Procedures.pdf.

Chmbr. R. at 3.

Yet, though it was apparent well before Defendant Fellner walked out of the deposition that court intervention was needed to avoid that outcome,[8] neither party

---

[8] For example, Mr. Molnar refused to stop questioning Mr. Fellner about his first wife's and son's names, despite both of them indicating that the dispute would likely need to be brought to Judge Goddard for resolution, and Mr. Fellner indicating that he would leave the deposition if the line of questioning continued:

| | |
|---|---|
| Q | . . . . What was her first name? |
| A | Whose? |
| Q | Your first wife. |
| A | I already told you I'm not answering it. We put a big red star by it. |
| Q | We did. I'm going to give you another opportunity before I drag you before the judge. |
| A | Drag me in front of the judge. |
| Q | Okay. What was your first wife's last name? |
| A | Same as my name. |
| Q | What was it before she married you? |
| A | I don't remember. |

. . .

| | |
|---|---|
| Q | How old is [your son] today? |
| A | Wait a minute. I'm not going to get into my whole kid's thing. I'm not doing any of this kid stuff. I'm not talking about my kids. They've got nothing to do with this case. Drag me in front of a judge because I want to have her tell me that my kids' names matter to what I did or didn't do. You do that. I can't wait. I can't wait. Let's just do it. Let's skip all this bullshit and just drag me in front of a judge. |
| Q | What's your son's name? |
| A | I'm not going to tell you. |
| Q | What does your son do? |
| A | I'm not going to tell you. I'm going to leave pretty soon if we keep doing this. . . . You can more than drag me in front of [the judge,] and I will explain to her. |

Fellner Dep. 23:3-24:16. Although Mr. Fellner did not leave at that point, he continued to tell Mr. Molnar to bring issues to the judge several times when he took issue with the line of questioning, including multiple times when Mr. Molnar and Mr. Fellner disagreed about whether Mr. Fellner had the right to invoke his Fifth Amendment privilege against self-incrimination. *See, e.g.*, Fellner Dep. 33:7-15, 36:18-37:2, 38:1-10, 39:1-14, 40:11-17, 54:12-24, 67:1-8, 70:13-16.

3:18-cv-1506-AHG

contacted the Court about this dispute until April 13, 2020, more than six weeks after the aborted deposition. In fact, immediately after his specially appearing attorney left the deposition, Mr. Fellner suggested that the parties contact the Court to intervene, and Mr. Molnar refused:

> THE WITNESS:   I think we need to put this whole thing in front of a judge. Let's do that.
> MR. MOLNAR:   I haven't made that decision yet.
> THE WITNESS:   I'm making it.
> MR. MOLNAR:   You don't get to make it.
> THE WITNESS:   Yeah, I'm going to leave.

Fellner Dep. 36:14-19.

Once more, however, Defendant Fellner did not leave, and continued to be cooperative in response to some questions, although he began invoking the Fifth Amendment privilege in response to many questions—often frivolously—as the deposition proceeded. In all, Defendant Fellner requested that issues be taken up by the Court at least ten separate times. Mr. Molnar ignored these requests and continued to question the deponent, even when it became clear that Defendant Fellner intended to "take the Fifth" in response to nearly every question.

Appointment of a discovery referee should not be the first resort. On the record before the Court, it is not at all clear that the issues that arose during Defendant Fellner's deposition "cannot be effectively and timely addressed" by the Court, as necessary to justify such an appointment. Fed. R. Civ. P. 53(a)(1)(C). Rather, the Court finds that its admonitions to Defendant Fellner and Plaintiff's counsel during the hearing on the present motion, as well as the guidance set forth in this order, should suffice to make clear the permissible conduct during the deposition. *See, e.g.*, *Dorroh v. Deerbrook Ins. Co.*, No. 1:11-CV-2120 AWI GSA, 2012 WL 4364149, at *10 (E.D. Cal. Sept. 21, 2012) (denying a request for a discovery referee, but setting forth explicit guidelines for deposition conduct and advising counsel that "failure to follow these guidelines will result in the probability of heavy sanctions against the offending attorney or party."); *Paige*, 248 F.R.D. at 278 ("Appointing a discovery referee, here, would be an unnecessary expense, and in light of

the Court's admonishment to counsel regarding their behavior at depositions, the Court finds this request is without merit."); *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17CV05554JSTTSH, 2019 WL 1855989, at *6 (N.D. Cal. Apr. 25, 2019) (denying the request to appoint a discovery referee and finding such supervision to be appropriate only where discovery abuses are "rampant") (citation omitted). *Cf. Jadwin v. Abraham*, No. 1:07CV00026-OWW-TAG, 2008 WL 4057921, at *7 (E.D. Cal. Aug. 22, 2008) (appointing a discovery referee in light of "numerous ongoing and continuing disputes that have arisen at nearly every deposition[,] . . . numerous informal telephone, email, and letter requests from counsel for the parties requesting judicial intervention during the depositions, [and] the strained relationship between such counsel and their inability to cooperate with each other at depositions"). And, to the extent that misconduct persists, the parties should follow Judge Goddard's Chambers Rules by contacting the Court and proceeding with the deposition in other areas of inquiry until the disputed areas of inquiry can be addressed.

Therefore, the Court **DENIES** the request to appoint a discovery referee. However, the Court will set forth explicit guidelines that the parties must follow at the continued deposition. It is the Court's hope that these guidelines will fulfill the same goals as appointing a discovery referee, but without the unnecessary expense.

### D. <u>Guidelines on Deposition Conduct</u>

First, Plaintiff must take Defendant Fellner's deposition remotely. Rule 30(b)(4) provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). Rule 30(b)(3) permits deposition testimony to "be recorded by audio, audiovisual, or stenographic means." Fed. R. Civ. P. 30(b)(3).

As an initial matter, in light of the COVID-19 public health crisis, the Court has been strongly encouraging litigants in all of its cases to take depositions remotely. Other courts have done the same. *See, e.g.*, *Sinceno v. Riverside Church in the City of N.Y.*, 2020 U.S. Dist. LEXIS 47859, at *1 (S.D.N.Y Mar. 18, 2020) (approving all depositions being taken

by "telephone, videoconference, or other remote means" in view of the COVID-19 pandemic); *see also Pearlstein v. Blackberry Ltd.*, 2020 U.S. Dist. LEXIS 47032, at *2-3 (S.D.N.Y. Mar. 16, 2020) (same); *Thomas v. Wallace, Rush, Schmidt, Inc.*, 2020 U.S. Dist. LEXIS 46925, at *6 (M.D. La. Mar. 18, 2020) (same); *De Lench v. Archie*, 2020 U.S. Dist. LEXIS 58049, at *6 (D. Mass. Apr. 2, 2020) ("In light of the current coronavirus pandemic, the Court encourages the parties to avail themselves of video technology for meetings, depositions, and other communication and interactions arising in the discovery process."). Further, although Mr. Molnar finds such claims unfounded and reprehensible, the Court cannot ignore Defendant Fellner's assertion that he "is fearful for his personal safety and well-being" because of Mr. Molnar. ECF No. 69 ¶ 27; *see also* ECF No. 69 at 9, Fellner Decl. ¶ 3 (stating that Mr. Fellner is "personally fearful of the Plaintiff's attorney and will be preparing and filing a restraining order"). Requiring the deposition to take place by videoconference obviates these concerns. *See Ewing v. Flora*, No. 14CV2925 AJB NLS, 2015 WL 5177772, at *5 (S.D. Cal. Aug. 26, 2015) (finding that "both parties' stated concerns of safety and efficiency can be addressed through less costly means" than appointment of a discovery master, and suggesting that the plaintiff take the defendant's deposition via videoconference or in the courthouse with a Court Security Officer present).

*If either party so requests*, the Court will provide a more detailed order governing the procedures for taking Defendant Fellner's deposition remotely by videoconference, to ensure that arranging this method of deposition does not spur additional disputes. Once the parties have arranged the deposition, they are **ORDERED** to contact the Court at efile_goddard@uscourts.gov with details regarding how the deposition will be conducted remotely, and how the Court may access it remotely. The Court is inclined to instruct chambers staff to observe the deposition to ensure compliance with this order.

Second, the second day of deposition is limited to *5.5 hours*. Third, the Court encourages—but will not require—a different Plaintiff's attorney to conduct the deposition of Defendant Fellner, because it is apparent there are irreconcilable conflicts between Mr. Molnar and Mr. Fellner. Fourth, Plaintiff's counsel shall not engage in a fishing expedition

during the deposition, and should remain focused on questioning Defendant Fellner regarding topics that are clearly relevant to the claims in this case. As a non-exhaustive list of examples, the Court does not look favorably on Mr. Molnar's questions about Defendant Fellner's first wife's or children's names, how many times he has been married, the geographic location of his brokerage firm or his law practice forty years ago, or trivial details about Mr. Fellner's 40-year-old conviction, such as whether he interacted with his co-defendants in prison and where they were incarcerated. The Court recognizes that Plaintiff's securities fraud claims in this case relate to the nondisclosure of Mr. Fellner's 1982 loan fraud conviction to Plaintiff when soliciting Plaintiff's investments between 2012 and 2016. The Court also understands that counsel should have some leeway to lay foundation for certain topics to create a clear record. However, the Court cannot fathom why Plaintiff would need or find useful the level of detail Mr. Molnar sought during the deposition regarding Mr. Fellner's long-dormant law practice, brokerage firm, his conviction and subsequent incarceration, and his personal family life in the early 1980s.

Generally, as the Court discussed during the hearing, it is inclined to agree to an extent with Defendant Fellner's perspective that many of the questions at the deposition did not seem to serve any purpose other than forcing Mr. Fellner to discuss uncomfortable or personal topics, since it is apparent from the record that Plaintiff already has knowledge and supporting documentation regarding most of the topics addressed. At several points, when Defendant Fellner was being intentionally obstructionist, Mr. Molnar prompted him to answer by confirming responsive information that Mr. Molnar supplied. Nonetheless, Plaintiff is entitled to take Defendant Fellner's deposition to develop evidence for Plaintiff's case, and Defendant Fellner's reaction to the questioning was inexcusable. Profane language and knowingly frivolous objections or threats to object to every question will not be tolerated and will be met with sanctions. If either counsel or the deponent believes that the other is engaging in unprofessional conduct during the continued deposition, or they otherwise reach an impasse regarding the propriety of any line of questioning, the proper recourse is to contact the Court rather than allowing the conflict to

escalate anywhere near the level it reached during the first day of deposition.

Fifth, the parties must ***strictly*** adhere to Rule 30(c)(2): "An objection at the time of the examination—whether to evidence, to a party's conduct, . . . to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, ***but the examination still proceeds; the testimony is taken subject to any objection.***" Fed. R. Civ. P. 30(c)(2) (emphasis added). Accordingly, if Defendant Fellner objects to a question on the basis of relevance, he must nonetheless answer the question. This directive also applies to Defendant Fellner's invocation of the Fifth Amendment. If Defendant Fellner objects to a question on the basis of the Fifth Amendment, Plaintiff's counsel must move on from that question, proceed in other areas of inquiry, and return to that line of questioning at the end of the deposition if necessary. If the parties still cannot resolve the dispute after meeting and conferring, they may then contact the Court for a resolution as to whether ***specific*** questions implicate the privilege. If the Court finds any of Defendant Fellner's objections on the basis of the privilege to be frivolous, it will not hesitate to impose sanctions.

To offer further guidance on that issue, the Court advises Defendant Fellner that he has no absolute right to assert a blanket Fifth Amendment privilege objection to all questions in a deposition. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) ("A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege."). Rather, in a civil case, "the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000) (citing *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995)). The "privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility* of prosecution and also covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence." *Glanzer*, 232 F.3d at 1263 (internal

3:18-cv-1506-AHG

quotations and citation omitted).

Importantly, Defendant Fellner is not prevented from invoking the Fifth Amendment in response to any of Plaintiff's deposition questions. After all, Rule 26 only permits discovery of "nonprivileged" information. Fed. R. Civ. P. 26(b)(1). *See also* Fed. R. Civ. P. 30(c)(2) (permitting a deponent not to answer a deposition question if "necessary to preserve a privilege"). However, "the Fifth Amendment's protections against self-incrimination are invoked on a question-by-question basis, and therefore the assertion of the privilege necessarily attaches only to the question being asked and the information sought by that particular question." *Glanzer*, 232 F.3d at 1265. Therefore, ***any invocation of the privilege by Defendant Fellner during a deposition must be specific to the question asked.***

Further, "the privilege normally is not asserted properly by merely declaring that an answer will incriminate." *Brunswick Corp. v. Doff*, 638 F.2d 108, 110 (9th Cir. 1981). *See also Baker v. Limber*, 647 F.2d 912, 916 (9th Cir. 1981). That said, the deponent is not required to "establish the precise manner in which he will incriminate himself by responding[,]" as such a requirement "would make the privilege useless." *Baker*, 647 F.2d at 916-17. Instead, "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* (quoting *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951)).

Ultimately, whether the privilege has been properly invoked is a determination for the Court, and "[t]he claimant is not the final arbiter of the validity of his assertion." *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). "[A]t a minimum," to be found to have properly asserted the privilege, the party invoking it must make "a good faith effort to provide the trial judge with sufficient information [to] make an intelligent evaluation of the claim." *Id.* Therefore, if Defendant Fellner invokes the privilege in response to specific questions during the continued deposition, and Plaintiff's counsel believes the privilege

does not apply, the parties must be prepared to present the Court with a clear list of *specific* questions from the deposition that Defendant Fellner contends implicate the privilege. Defendant Fellner must also be prepared to make a good-faith effort to give the Court sufficient information to determine whether his invocation with respect to each question is valid.

Defendant Fellner is cautioned that further deposition misconduct, including blatantly frivolous or blanket invocations of the Fifth Amendment privilege, *will* result in sanctions under Rule 37.

However, Plaintiff's counsel must also accept Defendant Fellner's invocation of the privilege and proceed with the examination, returning to disputed invocations of the privilege at the end of the deposition. *See* Fed. R. Civ. P. 30(c)(2); Chmbr. R. at 3. The transcript reveals that Mr. Molnar repeatedly refused to accept Mr. Fellner's invocations of the privilege, inquiring further into the basis for the invocation by asking whether Mr. Fellner's objections were based on a "real concern" that he may be criminally prosecuted for his answers. For example, during questioning about an agricultural property that was to be used to operate a medical marijuana business in which Strategic purportedly invested, Mr. Fellner attempted to invoke the Fifth Amendment. Mr. Molnar then proceeded to instruct Mr. Fellner repeatedly that the statute of limitations had run on all securities fraud charges that could be brought in connection with that business. When Mr. Fellner persisted in invoking the Fifth Amendment with respect to those issues, Mr. Molnar still refused to accept the invocation until Mr. Fellner explained the "real concern" underlying the invocation, which he eventually identified as the fact that cannabis is still a Schedule I drug under federal law. Mr. Molnar then began asking such questions as "Are you in the process of running an illegal marijuana operation at this moment?" and "Have you been running an illegal marijuana operation at any time since this lawsuit was filed?" Fellner Dep. 50:13-56:10. Mr. Molnar's refusal to move on from that topic and others on which the parties disagreed regarding the applicability of the Fifth Amendment privilege—or otherwise to contact the Court to address the propriety of Defendant Fellner's Fifth Amendment

objections, as Mr. Fellner repeatedly requested—contributed in no small part to the escalating animosity between the two. Again, the validity of the assertion is a question for the Court to decide—not Defendant Fellner *or* Plaintiff's counsel. *Davis*, 650 F.2d at 1160.

The Court also finds it unacceptable that Mr. Molnar instructed Mr. Fellner that he "do[es]n't get to make" the decision about whether to contact the Court for intervention in a dispute. Not only do the Court's Chambers Rules anticipate that counsel (or counsel and unrepresented parties, as was the case here) should meet and confer to try to address deposition disputes and then contact the Court, but Rule 30 of the Federal Rules also permits a deponent "[a]t any time during a deposition" to "move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). "The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting . . . party so demands, the deposition must be suspended for the time necessary to obtain an order" from the Court. *Id.* There was no basis for Mr. Molnar to state that it was his decision alone whether to involve the Court.

As mentioned during the hearing on the present motion, the Court also takes seriously the allegations in Ms. Menhennet's Declaration. Ms. Menhennet is a licensed attorney, and as such, she is an officer of the Court, who signed a statement under penalty of perjury that she was "shocked" by Mr. Molnar's deposition conduct, and that "Mr. Molnar threatened both Mr. Fellner and myself with monetary sanctions for Mr. Fellner's decision to invoke his Fifth Amendment rights." ECF No. 69 at 25.

Plaintiff is thus also put on notice that the Court will impose sanctions if counsel engages in similar conduct during the second day of deposition.

Finally, the Court understands from the briefing and from oral argument that the parties disagree regarding whether Defendant Fellner has waived the privilege with respect to certain topics. Because this issue is not squarely before the Court as to any particular question asked during the deposition, the Court will not speculate on when or whether such waiver may apply. But it is important to note for both parties' reference prior to the next

deposition that there is no bright-line rule governing waiver of the Fifth Amendment privilege. *Universal Trading & Inv. Co. v. Kiritchenko*, No. C-99-03073MMCEDL, 2007 WL 2300740, at *4 (N.D. Cal. Aug. 2, 2007); *see also Chevron U.S.A. Inc. v. M & M Petroleum Servs., Inc.*, No. SACV 07-818DOCANX, 2008 WL 5423820, at *3 (C.D. Cal. Dec. 30, 2008) (noting that the Ninth Circuit has never adopted the widely-cited Second Circuit two-part test for determining whether waiver has occurred). Generally, though, courts endorse the Second Circuit's admonition that a "testimonial waiver" of the Fifth Amendment privilege against self-incrimination based on the witness's prior statements "is not to be lightly inferred, and the courts accordingly indulge every reasonable presumption against finding a testimonial waiver." *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981). For that reason, if Plaintiff's counsel takes the position that Defendant Fellner has improperly invoked the privilege on the basis that he has waived the privilege through prior statements, Defendant Fellner need not take counsel's representation at face value. The question is likely to be a complicated one requiring the Court's determination, and the Court will not look favorably on any attempt by Plaintiff's counsel to force Defendant Fellner to accept opposing counsel's off-the-cuff legal analysis on that issue.

That said, the Court cautions Defendant Fellner that if he invokes the Fifth Amendment privilege with respect to topics on which he later attempts to present argument or testimony, the Court may prevent him from doing so, or may issue other evidentiary sanctions such as giving an adverse jury instruction that the jurors may consider his invocation of the privilege during his deposition in assessing his credibility. *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008) ("Trial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial"); *see also Aragonez v. Huff*, No. EDCV07992VAPJCRX, 2008 WL 11342742, at *1-2 (C.D. Cal. Dec. 16, 2008); *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994): "[B]ecause the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation

is apparent.").

### E. Whether to Impose Sanctions

Rule 30 allows the Court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Such sanctions do not require a finding of bad faith. *Manipoun v. Dibela*, No. 17-CV-02325-AJB-BGS, 2018 WL 5962674, at *2 (S.D. Cal. Nov. 13, 2018); *Mewborn v. Abbott Labs.*, No. CV188732DSFPLAX, 2019 WL 8060095, at *8 (C.D. Cal. Oct. 7, 2019).

The Court has already found that Defendant Fellner impeded the deposition through his obstructionist conduct and early termination of the deposition. However, Rule 30(d)(2) does not require imposition of sanctions against a party who impedes the deposition, and, in its discretion, the Court will not impose sanctions on Defendant Fellner. Although Mr. Fellner's conduct was unacceptable, as explained above, the Court was not impressed with the conduct of either party during the deposition. Under such circumstances, where both parties were responsible for escalating the conflict and contributing to significant delays of the questioning, the Court finds imposing sanctions on only one side to be unwarranted. *See, e.g.*, *Dorroh*, 2012 WL 4364149, at *11 (denying both parties' request for sanctions because "neither party has clean hands as both parties have engaged in dilatory tactics."); *Mewborn*, 2019 WL 8060095, at *6, *9 (denying both parties' requests for monetary sanctions, after finding neither party "blameless for the inappropriate tone set during plaintiff's deposition, which almost certainly resulted in a reduction in the amount of testimony plaintiff might have provided had the deposition proceeded without the inappropriate behavior engaged in by both counsel," and admonishing counsel for "the colossal amount of time that was wasted").

Defendant's request for sanctions against Mr. Molnar in his response brief was not properly raised and, in any event, is not well-taken for the same reasons. Accordingly, both parties' requests for sanctions are **DENIED**.

\\

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel Completion of Deposition of Defendant, Andrew Fellner, and for an Award of Monetary Sanctions in the Amount of $13,867.42, as well as for the Appointment of a Special Master/Discovery Referee to Preside over Same, or, in the Alternative, for Terminating Sanctions Against Defendant for his Repeated Failure to Cooperate in Discovery (ECF No. 63) is **GRANTED in part** and **DENIED** in part.

Plaintiff's request to compel further written discovery responses and documents from Defendant Fellner is **DENIED** as untimely.

Plaintiff's request to compel a further deposition of Defendant Fellner is **GRANTED**. Both parties are **ORDERED** to comply with the Court's guidelines on deposition conduct set forth herein.

Plaintiff's request for appointment of a discovery referee is **DENIED**.

Plaintiff's request for monetary and/or terminating sanctions is **DENIED**.

All of Defendant Fellner's requests for affirmative relief contained in his Response (ECF No. 69), including the request for a protective order disallowing a further deposition, the request for sanctions against Plaintiff and Plaintiff's counsel, and the request for an order compelling discovery from Plaintiff, are also **DENIED**.

**IT IS SO ORDERED.**

Dated:  June 29, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge